# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 99-10492

---

TSAI-SON NGUYEN; ROBERT GARDNER; JORGE VEGA; EMMA RODRIGUEZ; PROCOPIO CHAVEZ, JR.; JORGE RAMIREZ; OSBELIA TRUJILLO; JOSE ALDABA; GREGORIA MARTINEZ; TRINIDAD PEREZ; FERMIN REYES; SALVADOR TORRES,

                                                  Plaintiffs-Appellees,

versus

EXCEL CORPORATION, a corporation,

                                                  Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

December 15, 1999

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges.

POLITZ, Circuit Judge:

Excel Corporation appeals an order requiring its counsel to submit to deposition. Excel contends that it did not waive the attorney-client privilege; that if it waived the privilege, its executives rather than its counsel should be deposed about the previously privileged matters; and that if its counsel should be deposed, the scope of the questions authorized by the district court is too broad. For the reasons assigned we affirm the order requiring defense counsel to submit to depositions, subject to the modification of the scope as set forth herein.

## BACKGROUND

Invoking the Fair Labor Standards Act, 2300 hourly employees brought suit

against Excel, alleging that they were entitled to payment for time spent donning and doffing protective and sanitary clothing, and for time spent washing themselves and their equipment at shifts' end.[1]  The employees note that non-union hourly employees at other plants are compensated for the time spent in these activities. The employees assert that Excel's actions were willful, entitling them to compensation for a period of three years from the date of the filing of the complaint.  The employees also seek liquidated damages equal to the overtime compensation that they claim is due.

We begin by noting that 29 U.S.C. § 203(o) permits collective bargaining agreements, or custom and practice under such agreements, to exclude from compensable time the time employees spend changing clothes and washing before and after their shifts. Here, the Collective Bargaining Agreement provided that an employee's compensable time would start when work commenced at a station on the sequential production line, and would terminate when work ceased at that station.  Excel maintains that the existing CBA, as well as the CBAs through the years, excluded from compensable time that for which the employees now seek payment.  The employees counter that they are not changing into and out of personal clothing but, rather, equipment peculiar to the industry, required as a condition of employment, and owned by Excel.  The employees contend that the Department of Labor agrees with their interpretation.  A letter opinion of the DOL

---

[1] The district court has consolidated this case with another pending FLSA case involving the claims of 1,259 other Excel employees. **Zapata v. Excel, Inc.**, No. 2:97-CV-420 (N.D. Tex.).  Another similar case, **Berumen v. Excel, Inc.**, No. 2:97-CV-216 (N.D. Tex.), was tried to a jury which rendered a verdict favorable to plaintiffs.

provides that compensable time includes time spent putting on, taking off, or washing protective safety equipment that is integral to the performance of an employee's principal duties; further, compensable time includes time spent treating other equipment that is integral to the performance of an employee's principal duties. Excel responds that the DOL's recent interpretation represents an attempt to nullify administratively a legislative enactment.

Excel denies that it acted improperly; it denies that it acted willfully; and it affirmatively asserts two statutory good faith defenses. First, Excel contends that, consistent with 29 U.S.C. § 259,[2] its actions were in good faith conformity with and in reliance on an administrative practice or enforcement policy regarding the class of employers to which it belonged. Second, Excel contends that the employees are not entitled to liquidated damages because, consistent with 29 U.S.C. § 260,[3] its actions were in good faith and it had reasonable grounds for believing that its acts or omissions did not violate the FLSA.

Excel maintains that it will prove its good faith defenses under §§ 259 and

---

[2] In pertinent part, 29 U.S.C. § 259 provides: "[N]o employer shall be subject to any liability . . . on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged."

[3] In pertinent part, 29 U.S.C. § 260 provides: "In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the [FLSA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof . . . ."

3

260 by showing its knowledge of historical pay practices within the industry, the knowledge of the key Excel executives regarding the enforcement policies and practices of the Wage and Hour Division of the DOL concerning § 203(o), and that, in fact, Excel acted in a manner consistent with those DOL policies and practices. Excel contends that the DOL has approved its basis for measuring compensable time as well as similar bases employed by other companies. Excel asserts that its executives kept abreast of DOL policies on this issue, entitling it to the defense provided by § 259. Excel concedes that it consulted with its attorneys regarding the obligations imposed upon it by the FLSA, but contends that it has not asserted and will not assert reliance on advice of counsel as a predicate for its good faith beliefs. The employees counter that Excel's reliance on the practices of others in the industry should be viewed with skepticism because IBP, the largest company in Excel's industry, is paying the non-exempt hourly workers the disputed wages at union plants.

According to the employees, during depositions Excel executives could not articulate the basis of the company's good faith belief without stating their reliance upon counsel or without first taking a break in their depositions to confer with counsel. The employees contended that they were entitled to depose counsel because Excel placed at issue the knowledge of its executives when they offered reliance on the advice of counsel as a grounds for its good faith defense. The magistrate judge denied the request to depose counsel, but permitted the request to be renewed after other discovery avenues had been exhausted.

4

When the employees renewed their request, the magistrate judge ordered that the depositions of defense counsel[4] could proceed; the district court overruled Excel's objections. Excel appealed, and the district court stayed these depositions pending this court's resolution of the matter. Excel raises three issues on appeal – whether it waived the attorney-client privilege; if so, whether defense counsel should be deposed; and, if so, whether the scope of the questions to be posed during the depositions is sufficiently limited.

## ANALYSIS

*Jurisdiction*

Although neither party disputes that this court has jurisdiction, we address the issue briefly. Generally, an order compelling deposition testimony is not a final decision within the meaning of 28 U.S.C. § 1291, and in order to obtain interlocutory review of such a discovery order the party seeking review must refuse to comply with the order, be cited for contempt, and then appeal the contempt citation. When a subpoenaed third party does not have a direct and personal interest in suppression of the requested information, however, the third party is not likely to risk a contempt citation. Some attorneys may be willing to submit to a contempt citation to protect a client's confidences; some client-intervenors might find themselves denied meaningful review by attorneys unwilling to make such a sacrifice. We therefore have treated as an appealable final decision a trial court's

---

[4] The depositions of Robert Overman, trial counsel, and Bryan Pioske, in-house counsel, were authorized. According to one executive, Excel solicited advice equally from Overman and Pioske regarding its compliance with the FLSA.

5

order directing the testimony of counsel regarding a client's knowledge.[5]

*Waiver of Attorney-Client Privilege*

Excel contends that the district court erred[6] in finding that it waived its attorney-client privilege when its executives referred to counsel's advice. Excel maintains that mere assertion of a good faith defense does not waive the attorney client privilege.[7] Excel contends that, despite the fact that the advice of counsel might be relevant to the inquiry as a permissible basis of establishing the good faith defense, it did not and never intended to raise reliance-on-advice-of-counsel as support for its good faith defense. Excel further contends that there was no waiver of the attorney-client privilege, even if it revealed that it would rely on the advice

---

[5] **Conkling v. Turner**, 883 F.2d 431 (5th Cir. 1989).

[6] Excel cites Ninth Circuit precedent for the proposition that *de novo* review should be applied to the issue whether the attorney-client privilege has been waived. **United States v. Mendelsohn**, 896 F.2d 1183 (9th Cir. 1990); *see also* **Chaudhry v. Gallerizzo**, 174 F.3d 394 (4th Cir.), *cert. denied*, _____ U.S. _____, 120 S.Ct. 215 (1999); **In re Grand Jury Proceedings**, 78 F.3d 251 (6th Cir. 1996). Other circuits review for abuse of discretion. **Frontier Ref., Inc. v. Gorman-Rupp Co.**, 136 F.3d 695 (10th Cir. 1998) (reviewing waiver of attorney-client privilege for abuse of discretion, factual findings for clear error, and purely legal questions *de novo*); **Livingstone v. North Belle Vernon Borough**, 91 F.3d 515 (3d Cir. 1996) (reviewing waiver of attorney-client privilege for abuse of discretion), *cert. denied*, 520 U.S. 1142 (1997); **United States v. Bilzerian**, 926 F.2d 1285 (2d Cir. 1991) (same); **Greater Newburyport Clamshell Alliance v. Pub. Serv. Co.**, 838 F.2d 13 (1st Cir. 1988) (same). We have described the application of the attorney-client privilege as being a question of fact, **United States v. Neal**, 27 F.3d 1035 (5th Cir. 1994), *cert. denied*, 513 U.S. 1179 (1995), but we have not clearly stated that the question whether a client waives the attorney-client privilege is subject to a clearly erroneous standard of review. Whatever the standard of review, the district court did not err, clearly err, or abuse its discretion in the challenged order.

[7] **In re Burlington N., Inc.**, 822 F.2d 518 (5th Cir. 1987); **Ward v. Succession of Freeman**, 854 F.2d 780 (5th Cir. 1988).

6

of counsel, because plaintiffs first put defense counsel's advice at issue.[8]

According to Excel, its executives' admissions that privileged communications occurred do not waive the attorney-client privilege, nor do their "generic" references to communications with counsel. Finally, Excel contends that mere relevance of the privileged communication is inadequate for a court to authorize disclosure, instead the information must be "vital" to the party seeking disclosure. Therefore, according to Excel, it did not waive the privilege.

Appellees respond that the invocation of an affirmative defense, such as § 260, places at issue all steps taken by Excel to ascertain what the FLSA requires, including the solicitation of legal advice regarding the requirements of the Act and whether its actions would comply with the Act. Appellees note that the subjective element of § 260 demands that Excel prove it had an honest intention to ascertain the dictates of the FLSA and act accordingly.[9] According to appellees, Excel placed at issue the advice of counsel because it raised the issue concerning the knowledge of its executives regarding Excel's compliance with wage-hour laws. Appellees maintain that if Excel can control what information it relied upon for its

---

[8] Excel contends that appellees first raised the issue of its executives' states of mind by asserting that the FLSA violations were "willful." Excel notes that an order of the district court that appellees may discover "if in truth Excel suspected or had reason to suspect that it was not in compliance with the Act," speaks just as directly to willfulness as it does to good faith. The argument possesses logical force. The Third Circuit, addressing another point, chose language that undermines this contention. **Rhone-Poulenc Rorer Inc. v. Home Indem. Co.**, 32 F.3d 851, 863 (3d Cir. 1994) ("[I]n a patent suit, where an infringer is alleged to have acted willfully, . . . the advice of the infringer's counsel is not placed in issue . . . ."). Our resolution of the issue at bar does not turn on this point.

[9] *E.g.*, **Dybach v. Fla. Dept. of Corrections**, 942 F.2d 1562 (11th Cir. 1991).

7

affirmative defense, then it will not disclose information about which it had knowledge that revealed the illegality of its conduct. Such non-disclosure, according to appellees, would run contrary to the "honest intentions" that Excel seeks to establish. Appellees chiefly rely on cases from the Eleventh and Second circuits[10] for its conclusion that invocation of a good faith defense waives the attorney-client privilege.

We need not and do not adopt the position as pressed by appellees; rather, we view the matter more narrowly but conclude that the district court committed no reversible error in determining that Excel waived the attorney-client privilege herein. Alternative grounds support this conclusion. By failing to assert the attorney-client privilege when privileged information was sought, Excel waived the privilege. Then, Excel selectively disclosed portions of the privileged confidential communication, thereby implicitly waiving the privilege.

A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services.[11]

---

[10] **Cox v. Adm'r United States Steel & Carnegie**, 17 F.3d 1386, 1419 (11th Cir. 1994) ("Having gone beyond mere denial, affirmatively to assert good faith, [the defendant] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege."); **Bilzerian**, 926 F.2d at 1294 (affirming ruling that mere denial of allegation would not waive the privilege but assertions regarding defendant's good faith would be inextricably intertwined with his state of mind and would waive the privilege to determine the basis for such belief) (criminal context); *see generally* **Swidler & Berlin v. United States**, 118 S. Ct. 2081, 2087 (1998) ("[T]here is no case authority for the proposition that the privilege applies differently in criminal and civil cases . . . .").

[11] 3 JACK B. WEINSTEIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE §§ 503.10, 503.11, at 503-14-15 (2d ed. 1999); *see also* **Upjohn Co. v. United States**, 449 U.S. 383 (1981) (continuing the Court's assumption that the privilege applies when the client is a

A client waives the attorney-client privilege, however, by failing to assert it when confidential information is sought in legal proceedings.[12] Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the privilege.[13]   Further inquiry into the substance of the client's and attorney's discussions does implicate the privilege and an assertion is required to preserve the privilege.   A client's specific request to an attorney and pertinent information related thereto fall within the reaches of the privilege.[14] Additionally, the research undertaken by an attorney to respond to a client's request also falls within the

corporation); *see generally* FED R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged . . . .").

[12] FED. R. CIV. P. 26(b)(5) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . ., the party shall make the claim expressly . . . ."); **United States v. Sanders**, 979 F.2d 87 (7th Cir. 1992) (failing to object to question about communication waives the attorney-client privilege); **Hollins v. Powell**, 773 F.2d 191 (8th Cir. 1985) (same); 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2016.1, at 228-29 (2d ed. 1994) ("Failure to assert the privilege objection correctly can mean the privilege is waived. . . . In the deposition context, . . . the objection should ordinarily be asserted when a question seeking privileged material is asked . . . .").

[13] **United States v. White**, 887 F.2d 267, 271 (D.C. Cir. 1989) ("A general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege."); 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.14[5][f], at 503-51.

[14] **Swidler & Berlin**, 118 S. Ct. at 2086 ("[B]usinesses . . . may regularly consult their attorneys about a variety of problems arising in the course of business.  These confidences may not come close to any sort of admission of criminal wrongdoing, but nonetheless be matters which the client would not wish divulged."); **Upjohn Co.**, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); **id.** at 396 ("The client cannot be compelled to answer the question, 'What did you say . . . to the attorney?' . . . .") (citation omitted).

reaches of the privilege.[15]

Though Excel raised some privilege-based objections,[16] it did not object to all questions designed to elicit information about privileged communications. The district court observed that Excel did not object to all questions designed to elicit information about confidential communications, and that Excel did not halt its executives' responses to all such questions. These questions were designed to elicit information beyond the general nature of the legal services provided; they were designed to elicit information about the substance of the communication, touching on the directions given to counsel and the legal materials reviewed in addressing the question presented.[17] Excel waived the attorney-client privilege by its failure

---

[15] **Chaudhry**, 174 F.3d at 402-03 (holding that the attorney-client privilege protects against the disclosure of confidential information regarding legal advice, including the identity of the federal statutes researched by the attorney); **United States v. Amlani**, 169 F.3d 1189, 1195 (9th Cir. 1999) (holding that the attorney-client privilege protects against the disclosure of the "specific nature of the services provided, such as researching particular areas of law"); *see generally* **United States v. Ballard**, 779 F.2d 287, 290 (5th Cir. 1986) (A "lawyer's responses to [a client's] inquiries are privileged").

[16] Blanket claims of privilege are disfavored. **United States v. El Paso Co.**, 682 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents."); 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.47[1], at 26-148 (3d ed. 1999) ("A bald assertion of privilege is insufficient . . . . [A] claim of privilege must be directed to specific questions . . ., so that the trial court has enough information so as to rule on the privilege claim.") (footnotes omitted); 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.20[4][b], at 503-66.

[17] *E.g.*, Appellees' Record Excerpts, #6 (deposition of William F. Rupp) (Q [by appellees to Excel executive]: Have you had discussions with [counsel] about them [**Reich v. Monfort, Inc.** and **Reich v. IBP, Inc.**, the pertinent cases]? . . . A: . . . I have had general overall discussions with [counsel]. . . . Q: Has [counsel] given you input with respect to his interpretation of what those cases mean as it relates to Excel's compliance or noncompliance . . . with the [FLSA]? A: We– [counsel] and I discussed the case and discussed how we perceive that that impacts Excel and our position with regard to the change time and the donning and doffing equipment, et cetera. Q: And did you come to the conclusion that that is something that Excel does not owe the workers for in a union plant? A: That would be my

to assert the privilege.

As related, but alternative, grounds for affirming the district court's order, Excel waived the attorney-client privilege by selectively disclosing confidential communications. When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege.[18] Therefore, a client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client

understanding of the cases."); Appellees' Record Excerpts, #7 (deposition of William A. Buckner) ("Q: Have you had any discussion with [counsel] about those matters [the **Monfort** and **IBP** cases]? A: Yes. . . . Q: Would it be a fair statement to say that when this issue first arose in the industry that [counsel] was contacted and requested to research this area and determine whether or not . . . Excel was in compliance with the [FLSA]?" . . . A: Yes. Q: Would it be a fair statement to say that you asked him to determine or give you his opinion as to whether or not Excel was in compliance with the wage and hour aspects of the [FLSA] in light of these new cases? A: That's correct. Q: Would it be fair to say that [counsel] is more than just an outside litigator but that he advised you with regard to the meaning of the [FLSA] and Excel's compliance or noncompliance with it? A: That's correct. . . . Q: Have you . . . had any discussions with [counsel] about the December 3, 1997 Department of Labor opinion letter? A: I've had discussions with [counsel]. Q: About this letter? A: Yes.").

[18] **Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.**, 953 F.2d 1004, 1007 (5th Cir. 1992) ("The privilege protects only confidential communications . . . ."); **El Paso Co.**, 682 F.2d at 539 ("The need to cloak [confidential] communications with secrecy . . . ends when the secrets pass through the client's lips to others."); 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.15[1], at 503-57 ("The lawyer-client privilege applies only when the communication is confidential. A communication is confidential when the circumstances indicate that it was not intended to be disclosed to third persons other than (1) those to whom disclosure is in furtherance of the rendition of legal services to the client, or (2) those reasonably necessary for the transmission of the communication.") (footnotes omitted). In accord with this principle is a client's inability to, at once, employ the privilege as both a sword and a shield. **Bilzerian**, 926 F.2d at 1292; *see generally* FED. R. EVID. 501 ("[T]he privilege . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience"). Attempts at such improper dual usage of the privilege result in a waiver by implication.

11

communication.[19]

As discussed above, the Excel executives testified about privileged attorney-client communications. They testified about the directions that they provided their attorneys, and they testified about the legal research undertaken by their attorneys. Objections were raised when appellees sought to elicit the attorneys' conclusions as to their research, but these objections were too little, too late. "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole."[20]

Because of the importance of the attorney-client privilege, we pause to reaffirm that the privilege serves the valuable purpose of encouraging full and frank communication between clients and their attorneys, thereby promoting the broad public interests in the observance of law and the administration of justice.[21] That executives may have struggled to enumerate bases for Excel's good faith belief, other than the advice of counsel, does not mandate the outcome of this issue.[22] We conclude that Excel waived the attorney-client privilege by its own failures – its

---

[19] **United States v. Woodall**, 438 F.2d 1317, 1324 (5th Cir. 1970) (en banc) ("[A] client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter [because] 'the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.'" (quoting 8 JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 2327, at 638 (1961)).

[20] **Indus. Clearinghouse, Inc.**, 953 F.2d at 1007; **El Paso Co.**, 682 F.2d at 538.

[21] **El Paso Co.**, 682 F.2d at 538.

[22] **Swidler & Berlin**, 118 S. Ct. at 2087; **Burlington N.**, 822 F.2d at 533 ("Attorney/client [confidences] may be quite helpful in making out [plaintiff's] claim . . ., but this is not a sufficient basis for abrogating the privilege.").

12

failure to object and its failure to maintain the confidentiality of its communications. *Deposing Defense Counsel*

Excel next maintains that, even if it waived the privilege, its executives rather than its counsel should be deposed regarding matters no longer privileged. Excel encourages this court to adopt the inquiry of the Eighth Circuit and forbid a party from deposing opposing counsel unless (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case.[23]   Excel contends that appellees cannot establish any of the three criteria.

Regarding the first factor, Excel contends that the information could be obtained from the Excel executives themselves rather than defense counsel. Excel asserts that it raised privilege-based objections during the depositions when appellees attempted to question Excel executives about their communications with counsel, but if the privilege were waived, then appellees should depose the executives rather than defense counsel.     Regarding the second factor, Excel reasserts that the information requested is privileged. Regarding the third factor, Excel maintains that the information requested is not crucial to appellees' preparation of the case. Excel contends that it has disclosed the bases for its good faith defense, and those bases do not include reliance upon the advice of counsel, so testimony from defense counsel is not crucial to appellees' preparation to undermine the bases that will be offered at trial. Appellees simply adopt as their

_____

[23] **Shelton v. Am. Motors Corp.**, 805 F.2d 1323 (8th Cir. 1986).

13

position the district court's orders.

Rule 26(c) of the Rules of Civil Procedure empowers a district court to issue an order to protect a party or witness from whom discovery is sought.[24] For good cause shown, a district court may order that discovery be had by a method other than that selected by the party seeking discovery.[25] Because depositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances,[26] one would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order.

The district court, however, did not abuse its discretion [27] in authorizing the depositions of defense counsel, even assuming the applicability of the **Shelton** inquiry. As to the first factor – a deposition of defense counsel should not be ordered when the information sought could be otherwise obtained – the district court determined, and Excel does not contest, that the only source of information

---

[24] FED. R. CIV. P. 26(c).

[25] FED. R. CIV. P. 26(c)(3).

[26] **Shelton**, 805 F.2d at 1327 (discussing that deposing counsel opposite "disrupts the adversarial system[,] . . . lowers the standards of the profession, . . . adds to the already burdensome time and costs of litigation[, and] . . . detracts from the quality of client representation"); *see also* **Gould Inc. v. Mitsui Mining & Smelting Co.,** 825 F.2d 676, 680 n.2 (2d Cir. 1987) (noting that the tactic of seeking discovery from opposing counsel is generally disfavored).

[27] As a general proposition, a district court can exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion. **Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit**, 28 F.3d 1388, 1394 (5th Cir. 1994); *see also* **Wang v. Hsu**, 919 F.2d 130, 130 (10th Cir. 1990) ("An abuse of discretion occurs only when the trial court based its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling.").

besides defense counsel is Excel's executives. According to the district court, Excel's executives offered only "vague and non-specific" explanations in response to appellees' questions about their good faith beliefs. On at least one occasion, an Excel executive requested a break in the deposition to confer with counsel before he would be able to provide with specificity the bases underlying his belief that Excel acted in good faith. The district court found, without clear error, that Excel responded to interrogatories with answers so incomplete and ambiguous that they were without meaning, and that the executives had made no writings that might enable them to respond to future inquiries posed by appellees. Excel suggests that additional questions be posed to its executives, and were we addressing the issue anew, we might agree. In light of Excel's responses to the questions posed, however, we cannot conclude that Excel has established that the district court abused its discretion in determining that its executives could not respond meaningfully to the questions to be posed.[28]

As to the second factor, the information sought is relevant and non-privileged.[29] As to third factor, the information sought is crucial to appellees' preparation of the case. Excel seeks to establish its good faith compliance with the law. Appellees seek to explore the legal advice received by Excel, in light of its

---

[28] **Conkling**, 883 F.2d at 433 (affirming the district court's order that counsel must submit to deposition after the client provided unsatisfactory, non-specific answers to written interrogatories about matters no longer privileged without giving the client an additional opportunity to respond); *see generally* **S. Ry. Co. v. Lanham**, 403 F.2d 119, 130 (5th Cir. 1968) ("A lawsuit is not a contest in concealment . . . .").

[29] *See supra*.

waiver of the attorney-client privilege, to counter Excel's assertion of good faith. The district court did not abuse its discretion in concluding that defense counsel were subject to deposition by appellees.

*Scope of Deposition Inquiry*

Finally, Excel maintains that, if it waived the attorney-client privilege and if the depositions of its counsel are permitted, the scope of the questions to be posed to defense counsel during these depositions is overly broad. The district court noted with approval the magistrate judge's order regarding the reaches of permissible discovery. The magistrate judge limited discoverable matters to:

> the "good faith" defense including, but not limited to inquiring about advice rendered to defendant or defendant's representatives concerning the applicability of the F.L.S.A. with regard to issues pertinent to this case, the meaning of **Reich v. I.B.P.** and its applicability to defendant's operations, and defendant's compliance or non-compliance with the F.L.S.A. and case law interpreting the requirements of the F.L.S.A. as applicable to this case. Plaintiffs may also inquire as to counsels' understanding of what defendant and/or defendant's representatives perceived as compliance or non-compliance with applicable statutes and case law relevant to the issues raised in this case, as well as defendant's perceptions of industry practice and the positions of employee unions. Counsel may also be queried concerning their opinions as to whether their advice concerning the above-noted areas was followed and/or relied upon. The inquiry shall only be allowed for the period up to the filing of the instant law suit, and inquiry shall not be allowed with respect to counsel's work product, mental impressions, and confidential attorney-client communications which occurred subsequent to the filing of this lawsuit.

District courts typically review written questions to be posed to counsel; here, no written questions were provided to the district court and the court did not request same. Further, the district court expressed its belief that written discovery was not

16

an adequate substitute for oral depositions in this case.[30]

The first sentence of the magistrate judge's order deals with inquiry into objective facts: what the client said, what counsel said, and when they said it. We previously have permitted such inquiry.[31]

The second sentence of the magistrate judge's order permits inquiry into counsels' understanding of defendant's perceptions, and the third sentence of the order permits inquiry into counsels' opinions. These inquiries are impermissible. "An attorney's thoughts [are] inviolate . . . ."[32] Even though an attorney's mental impressions and opinions fall outside of the attorney-client privilege, they also "fall[] outside the arena of discovery [as their disclosure would] contravene[] the public policy underlying the orderly prosecution and defense of legal claims."[33] In **Hickman v. Taylor**, the Supreme Court addressed whether an attorney's work product warranted protection, but the offered rationale for protecting the work product was the protection of the attorney's mental impressions and opinions.[34]

---

[30] Excel challenges this conclusion but offers nothing necessitating reversal on this point.

[31] **Conkling**, 883 F.2d at 435.

[32] **Hickman v. Taylor**, 329 U.S. 495, 511 (1947); **El Paso Co.**, 682 F.2d at 542 (The "invasion of a lawyer's private thoughts would demoralize the profession."); *see generally* FED. R. CIV. P. 26(b)(3) ("[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . of a party concerning the litigation.").

[33] **Hickman**, 329 U.S. at 510.

[34] **Id.** at 508-14; 6 MOORE'S FEDERAL PRACTICE § 26.70[2][c], at 26-209 ("[C]ourts have protected an attorney's thoughts, mental processes, strategy, and opinions from disclosure, regardless of the discovery method employed. . . . Courts have continued to apply **Hickman** to prevent circumventing the work product doctrine by attempting to elicit an attorney's thought processes through depositions or interrogatories.").

17

The magistrate judge recognized as much by forbidding inquiry into counsel's work product and mental impressions. However, inquiry into counsels' perceptions and opinions was authorized. Such inquiry is inappropriate. Additionally, appellees effectively seek counsels' assessment of Excel's compliance with the law. "Discovery[,however,] was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary."[35] The magistrate judge's order exceeds allowable bounds in permitting such herein.

## CONCLUSION

For the reasons assigned, the order requiring defense counsel to submit to depositions is affirmed. The scope of the inquiry permitted is to be limited in a manner consistent herewith.

As modified, AFFIRMED.

---

[35] **Hickman**, 329 U.S. at 516 (Jackson, J., concurring).

18